[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-12675

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

HASAN ALI MUHAMMED,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:13-cr-20939-JAL-1

————————————————

Before JORDAN, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Hasan Muhammed appeals his convictions for failure to file an accurate currency report, in violation of 31 U.S.C. §§ 5316(a)(1)(B), 5316(b), 5322(a), and 31 C.F.R. § 1010.340 (Count 1); and possession with intent to transfer five or more identification documents, in violation of 18 U.S.C. § 1028(a)(3) (Count 4). Muhammed argues on appeal that the district court abused its discretion by admitting evidence of his arrest in 2022, the drone video thereof, and the contents found on him at that time; he argues that it was error under Federal Rule of Evidence 404(b) to admit this prejudicial evidence. Muhammed also argues that the district court erred in giving a deliberate ignorance jury instruction.

## I. Prejudicial Evidence

A few background facts may be helpful in understanding this first issue. In 2014, Muhammed was charged in a superseding indictment with: Count 1, failure to file an accurate currency report, in violation of 31 U.S.C. §§ 5316(a)(1)(B), 5316(b), 5322(a), and 31 C.F.R. § 1010.340; and Count 4, possession with intent to transfer five or more identification documents, in violation of 18 U.S.C. § 1028(a)(3). These charges arose from Muhammed's 2013 arrest at the Miami airport, after he arrived from Mexico carrying $31,000 in cash which he did not report and possessing five or more identification documents. However, Muhammed failed to appear for his scheduled trial in July 2014; a bench warrant issued for his arrest

and Muhammed was a fugitive from justice for eight years until his rearrest in 2022. After his recapture in 2022, Muhammed was brought to trial in 2023 on the original charges, including Count 1 (the failure to file the currency report) and Count 4 (the five or more identification documents), on both of which the jury returned a guilty verdict. In the 2023 proceedings, about which Muhammed now complains on appeal, the government filed a notice of intent to introduce the following into evidence, under Rule 404(b) as inextricably intertwined evidence necessary to complete the story of the now recharged 2013 crime: 1) the more than $12,000 that was in his possession at the time of his 2022 arrest; and 2) the birth certificate in the name of another person, also found in his pocket at the time of his 2022 arrest. Muhammed filed a notice of non-opposition to this evidence and later expressly agreed to its admission into evidence. Muhammed did object, however, to the introduction of the drone video taken at the time of his 2022 arrest, which showed him running from the officers looking for him, and the officers finally capturing him after he had hidden in a drain pipe and refused to exit for four hours. The 2022 arrest was triggered by a 911 call that a person later identified as Muhammed was on the caller's property. The responding officers learned that the suspect was Muhammed and were aware of the warrant for his arrest, and therefore deployed the drone to surveil the property and assist with locating and arresting him.

We review the admission of evidence under Rule 404(b) for abuse of discretion. *United States v. Culver*, 598 F.3d 740, 747 (11th Cir. 2010). We review the district court's decision to admit

evidence of a defendant's flight for abuse of discretion, and that decision will not be overturned "absent a showing of clear abuse." *United States v. Blakey*, 960 F.2d 996, 1001 (11th Cir. 1992). "[T]he district court is uniquely situated to make nuanced judgments on questions that require the careful balancing of fact-specific concepts like probativeness and prejudice, and we are loathe to disturb the sound exercise of its discretion in these areas." *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013) (quotation marks omitted). We will reverse a district court's erroneous evidentiary ruling only if the error was not harmless. *United States v. Bradley*, 644 F.3d 1213, 1270 (11th Cir. 2011). Under that standard, reversal is warranted only if the error "resulted in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." *United States v. Guzman*, 167 F.3d 1350, 1353 (11th Cir. 1999) (quotation marks omitted).

A party may not challenge as error a district court's ruling if that party induced or invited the district court to commit that error. *See United States v. Stone*, 139 F.3d 822, 838 (11th Cir. 1998) ("For example, a defendant can invite error by introducing otherwise inadmissible evidence at trial or by submitting an incorrect jury instruction to the district judge which is then given to the jury. Generally, an appellate court will not review an error invited by a defendant, on the rationale that the defendant should not benefit from introducing error at trial with the intention of creating grounds for reversal on appeal.").

Under Federal Rule of Evidence 404(b), evidence of past crimes, wrongs, or other acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). To be admissible under Rule 404(b), evidence of prior bad acts must (1) be relevant to an issue other than the defendant's character; (2) be sufficiently supported by proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s); and (3) possess probative value that is not substantially outweighed by undue prejudice and otherwise comply with Rule 403. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). Rule 404(b) is a rule of "inclusion which allows extrinsic evidence unless it tends to prove only criminal propensity." *United States v. Sanders*, 668 F.3d 1298, 1314 (11th Cir. 2012) (quotation marks omitted).

Rule 404(b) does not apply to evidence that is intrinsic to the charged offenses. *United States v. Ford*, 784 F.3d 1386, 1393 (11th Cir. 2015). Evidence is intrinsic and outside the scope of Rule 404(b) when it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *Edouard*, 485 F.3d at 1344 (quotation marks omitted).

Evidence of uncharged or past crimes, wrongs, or other acts, whether "inside or outside the scope of Rule 404(b), must still satisfy the requirements of Rule 403." *Id.* Rule 403 states that district courts "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Factors to be considered include the overall similarity of the extrinsic and charged offenses, the time separating the extrinsic and charged offenses, the government's need for the evidence, and "whether it appeared at the commencement of trial that the defendant would contest the issue" for which the evidence is to be used. *United States v. Dorsey*, 819 F.2d 1055, 1061 (11th Cir. 1987). Rule 403 is an extraordinary remedy that courts should employ "only sparingly since it permits the trial court to exclude concededly probative evidence." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006) (quotation marks omitted). Accordingly, we view the disputed evidence "in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id.* (quotation marks omitted).

"Evidence of flight is admissible to demonstrate consciousness of guilt and thereby guilt." *Blakey*, 960 F.2d at 1000. The probative value of flight evidence depends on the extent to which it allows for the factfinder to make inferential steps: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt

concerning the crime charged to actual guilt of the crime charged." *United States v. Borders*, 693 F.2d 1318, 1325 (11th Cir. 1982). Inferences from a defendant's flight must be "made cautiously and with a sensitivity to the facts of the particular case." *Id.*

A court's limiting instruction can reduce the risk of undue prejudice. *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005); *see also United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1225 (11th Cir. 1993) (noting that, where the district court issued a limiting instruction both at the presentation of the evidence and in its final charge to the jury, "any unfair prejudice possibly caused by its introduction was mitigated"). A jury is presumed to follow limiting instructions. *United States v. Hill*, 643 F.3d 807, 829 (11th Cir. 2011).

Here, Muhammed's claim—that the district court committed Rule 404(b) error by admitting evidence (i.e. more than $12,000 in cash and a birth certificate in another's name) in his possession at the time of his 2022 arrest—fails because Muhammed invited the alleged error. *Stone*, 139 F.3d at 838. First, Muhammed filed a notice of non-opposition to the government's notice of intent to admit such evidence under Rule 404(b). Then, at the pretrial conference, Muhammed's counsel said that the government was "seeking to introduce the cash and a birth certificate[,] which we've agreed that they can introduce." When Lieutenant McCarty testified to the $12,291 and the birth certificate belonging to Charles Willis Ferguson seized during Muhammed's 2022 arrest, Muhammed did not object, and he even testified to such evidence to support his

defense.    Muhammed cannot now claim that the district court erred in admitting the evidence that he told the court he agreed with the government to introduce. *Stone*, 139 F.3d at 838.[1]

Next, the video footage evidence of Muhammed's 2022 arrest was admissible as intrinsic evidence outside the scope of Rule 404(b) because it was inextricably intertwined with the charged offenses in the superseding indictment. *See Edouard*, 485 F.3d at 1344. The challenged evidence shows several police officers capturing Muhammed in 2022. Because Muhammed failed to appear for the first day of trial and evaded apprehension for years, the video footage depicting his eventual arrest, which led to his presence at trial, is necessary to complete the story of the crime. *Edouard*, 485 F.3d at 1344. And, as Officer Dillon testified, he was aware of the arrest warrant for Muhammed before he arrived on the property and deployed the drone.

Additionally, the circumstances of Muhammed's flight and capture were admissible to demonstrate consciousness of guilt. *See Blakey*, 960 F.2d at 1000. The district court reduced the risk of prejudice by explaining to the jury that even if the jury found that Muhammed intentionally fled from law enforcement, they need not necessarily find that such behavior evidenced guilt. *Ramirez*, 426

---

[1] Muhammed also suggests in his brief on appeal that the government was erroneously allowed to introduce a pipe bomb and bomb-making materials which were located in the drain pipe in which he was hiding at the time of his arrest in 2022. However, his suggestion of error is misplaced: the jury heard no evidence of a pipe bomb or materials for making a bomb; the jury heard nothing about terrorism.

F.3d at 1354.  The district court's instruction walked the jury through all the inferential steps from flight or concealment to consciousness of guilt, from consciousness of guilt to consciousness of guilt of the specific crimes charged in the superseding indictment, and from specific consciousness of guilt to actual guilt.  *See Borders*, 693 F.2d at 1325.  A limiting instruction of this kind reduces the risk of prejudice so that admitting the evidence of Muhammed's 2022 arrest is not reversible error.  *Ramirez*, 426 F.3d at 1354; *Bradley*, 644 F.3d at 1270.  Accordingly, the district court did not abuse its discretion by admitting the evidence.

## II.  Deliberate Ignorance

We review *de novo* the legal question of whether the circumstances of a particular case rendered it appropriate to instruct the jury on deliberate ignorance.  *United States v. Stone*, 9 F.3d 934, 937 (11th Cir. 1993).  But our review of jury instructions is deferential, and we will reverse only if "left with a substantial and eradicable doubt as to whether the jury was properly guided in its deliberations."  *United States v. Crabtree*, 878 F.3d 1274, 1289 (11th Cir. 2018) (quotation marks omitted).  And when "a party did not object to a jury instruction in the district court, we review that instruction for plain error."  *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000).  "The district court has broad discretion in formulating a jury charge as long as the charge as whole is a correct statement of the law."  *Crabtree*, 878 F.3d at 1289 (quotation marks omitted).  Where a party expressly accepts a jury instruction, "such action constitutes invited error" and "serve[s] to waive a party's right to challenge the

accepted instruction on appeal." *United States v. Silvestri*, 409 F.3d 1311, 1337 (11th Cir. 2005).

We have long recognized that "the knowledge element of a violation of a criminal statute can be proved by demonstrating either actual knowledge or deliberate ignorance." *United States v. Hirstov*, 466 F.3d 949, 952 (11th Cir. 2006) (quotation marks omitted). Deliberate ignorance, as an alternative to actual knowledge, can be proven when a defendant is suspicious but does not make further inquiries so as to remain ignorant. *Id*. A deliberate ignorance instruction is appropriate when the facts "support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." *United States v. Rivera*, 944 F.2d 1563, 1571 (11th Cir. 1991) (quotation omitted). Deliberate ignorance may be shown by either direct or circumstantial evidence and the standard is the same whether the evidence is direct or circumstantial. *United States v. Arias*, 984 F.2d 1139, 1143 (11th Cir. 1993).

We have cautioned district courts against instructing juries on deliberate ignorance when the evidence only points to either actual knowledge or no knowledge on the part of the defendant. *Stone*, 9 F.3d at 937. But it is not error to give the instruction "when the evidence could support both actual knowledge or deliberate ignorance and the jury was instructed on both." *United States v. Maitre*, 898 F.3d 1151, 1157 (11th Cir. 2018).

Any error in giving a deliberate ignorance instruction is harmless, however, if the jury was properly instructed that finding deliberate ignorance requires proof beyond a reasonable doubt, the jury was also instructed on the theory of actual knowledge, and there was sufficient evidence to support actual knowledge. *Stone*, 9 F.3d at 937-39; *see also United States v. Steed,* 548 F.3d 961, 977 (11th Cir. 2008) ("[I]nstructing the jury on deliberate ignorance is harmless error where the jury was also instructed and could have convicted on an alternative, sufficiently supported theory of actual knowledge."). This is so because we assume that juries obey the district court's instructions, and if "there was insufficient evidence of deliberate ignorance to prove that theory beyond a reasonable doubt, then the jury, following the instruction, as we must assume it did, did not convict on deliberate ignorance grounds." *Stone*, 9 F.3d at 938.

Here, Muhammed's acceptance of the deliberate ignorance instruction before the district court constitutes invited error and he has waived his right to challenge the deliberate ignorance instruction on appeal. In any event, the district court did not plainly err by giving the jury deliberate ignorance instructions because the evidence could support both actual knowledge or deliberate ignorance and the jury was instructed on both.

**AFFIRMED.**